2 Ill. App.3d 560 (1971)
276 N.E.2d 751
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v.
HENRY PICKETT, Appellant.
No. 70-1.
Illinois Appellate Court  Fifth District.
November 19, 1971.
Rehearing denied December 14, 1971.
*561 Kenneth L. Gillis, of Defender Project, of Chicago, for appellant.
Robert H. Rice, State's Attorney, of Belleville, for the People.
Judgment affirmed.
Mr. JUSTICE JONES delivered the opinion of the court:
Defendant appeals his conviction after a jury trial of the crime of attempted armed robbery, for which he received a sentence to the penitentiary of not less than nine years nor more than fifteen years. A verdict of not guilty was returned on a companion charge of aggravated battery.
The defendant does not dispute the fact that an attempted armed robbery and shooting occurred. He contends he was not a participant. From testimony of witnesses called by both prosecution and defense it appears that on September 24, 1967, defendant was running a card game in Madison, Illinois during the late evening hours. At approximately 12:00 P.M. he left for a trip in an automobile with others involved in the card game, including his brother, during which his brother was to *562 get some money from some girl's house. They stopped at the St. Clair cafe in East St. Louis to get some whiskey. Defendant went to the front door which was locked but after knocking he was admitted by the bartender, Mrs. Virginia Komeshak. He ordered some V O whiskey and when told that brand was not available he started to leave. Mrs. Komeshak asked him to leave by the side door and he started to comply. When the door was opened by Mrs. Komeshak two armed men broke through the storm door and entered and announced a holdup. One of the men, defendant's brother, was armed with an automatic rifle, the other with a pistol. The complaining witness, Mrs. Komeshak, identified the men, defendant as a participant in the holdup and stated he was armed with a pistol and the one of the three participants who held a pistol to the head of a customer. Shooting erupted when the complaining witness produced a gun from under the counter near the cash register and commenced firing at the assailants. The defendant was wounded and his brother was killed in the shooting. Mrs. Komeshak was shot in the stomach and arm and severely wounded. Defendant stated that he knew nothing of the plans for the robbery, that he had merely entered the tavern to purchase a half pint of V O whiskey and while he was inside his brother and another (who had been at the card game and a passenger in the automobile) entered and started shooting. He also testified that he had no gun.
Defendant in this appeal argues that (1) his guilt beyond a reasonable doubt was not shown; (2) the jury was given improper instructions; (3) he was deprived of his right to counsel when the jury verdicts were taken while his counsel was absent; (4) his trial counsel was incompetent; and (5) his sentence was excessive.
 1, 2 We have examined the abstract and transcript of the testimony and can conclude only that the guilty verdict returned by the jury upon their hearing and observing the witnesses is fully supported by the evidence. Defendant's association with other participants in the crime in a card game immediately preceding the trip to the tavern, his presence in the automobile during the trip, his presence in the tavern during the holdup, his failure to flee during the progress of the holdup, his receiving a wound in the melee that erupted, are all strongly suggestive that he was in league with the perpetrators from the inception of the plan to its abortive and tragic conclusion. Although the complaining witness is claimed to have exhibited some equivocation in her identification of defendant as a participant it is our impression that it is merely semantical, the result of her choice of words, rather than her uncertainty. She positively identified defendant and stated she was certain of it. Defendant's charge that the complaining witness failed to go to the police for two *563 years after the incident is explained in large measure by the fact that she lay unconscious in a hospital for five weeks following the incident and was hospitalized a total of approximately thirteen weeks.
 3 Defendant's objections to instructions merit scant comment. I.P.I., Criminal, number 1.01 was given. The objection is that it told the jury that they could consider the evidence "in the light of (ones) observation and experience in life." I.P.I., Criminal, number 26.01 was given which advised the jury that, "your agreement upon a verdict must be unanimous." Defendant's objections to these instructions are not well taken. They follow the pattern instructions and are not subject to the objections defendant raises. I.P.I., Criminal, number 6.07 was given to define the issues in attempted armed robbery and defendant argues it was incompetent and erroneous. The instruction was supplemented by I.P.I., Criminal, number 14.01 which defines the crime of armed robbery. Taken together the instructions were proper and adequate to inform the jury of the issues in armed robbery. We find no deficiencies or extraneous matters which could serve to mislead or misinform the jury.
 4 Defendant argues that his trial counsel was incompetent because he allowed defendant to be given an excessive sentence, he permitted other participants in the robbery and the automobile trip, called as defense witnesses, to impeach defendant's testimony, he did not endeavor to produce the desired result which was an acquittal for defendant, and for other reasons which we need not detail. Defendant's argument is not well taken. It is apparent from the transcript and record that defendant's counsel was thorough and able in his defense and did everything he reasonably could do. He is not subject to criticism because he did not obtain the desired result of an acquittal. Simply stated the evidence of guilt was too strong to be overcome by defense tactics.
Of greater import is defendant's argument that the absence of his attorney when the court received the jury verdict deprived him of effective representation of counsel as guaranteed by the VI Amendment of the United States Constitution. It appears from the record that the jury was instructed and retired for deliberation in the afternoon and reached its verdict before being recessed for the day. Pursuant to adjournment court was convened at 9:30 A.M. on the following day with the judge, jury, state's attorney and defendant all present, but the defendant's attorney was absent. At 9:50 A.M., after some unsuccessful attempts to locate defendant's attorney, the jury verdicts were received and filed. The verdicts were in regular form and signed by all jurors. The jury was not polled and the defendant was told nothing regarding polling of the jury. Defendant's attorney was privately retained and had represented him throughout the pretrial proceedings and at the trial and was present at *564 the time of hearing on an application for probation and the imposition of sentence.
We are neither cited nor able to find any Illinois case which precisely presents the question here, i.e., what is the effect upon defendant's VI Amendment right to counsel when the jury verdict is received and filed in the absence of defendant's counsel?
 5, 6 The host of cases following Gideon v. Wainright, 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792 permits us to forego as unnecessary any discussion of the right of the defendant to be represented by counsel at every stage of the trial. (See People v. Allen, 37 Ill.2d 167, 226 N.E.2d 1; People v. Noble, 42 Ill.2d 425, 248 N.E.2d 96; People v. Taylor, 32 Ill.2d 165, 204 N.E.2d 734.) The rendition of the verdict is a part of the trial, a critical phase where substantial rights of the defendant are affected. It must therefore go undisputed that the VI Amendment right to counsel extends to the rendition of the verdict of the jury. It is against this background, then, that defendant asserts the absence of his counsel at the rendition of the verdict deprived him of substantial rights, principally his right to poll the jury. It cannot be seriously questioned that in Illinois a defendant in a criminal case is entitled, as of right, upon request, to have the jury polled upon rendition of its verdict. (Nomaque v. People, 1 Ill. (Breese) 145; People v. DeStefano, 64 Ill. App.2d 389, 212 N.E.2d 357; People v. Stevenson, 107 Ill. App.2d 441, 246 N.E.2d 309.) But to say that a defendant has a constitutional right to be represented by counsel at the rendition of a jury's verdict is something less than saying that a defendant's counsel must be so present irrespective of any conditions of circumstances. The presence of counsel is not an absolute. The constitutional requirement is satisfied when the opportunity to exercise the right is reasonably extended. It may be waived along with other procedural rights of constitutional dimension. (See People v. Novotny, 41 Ill.2d 401, 244 N.E.2d 182; People v. Allen, supra; People v. DeSimone, 9 Ill.2d 522, 138 N.E.2d 556.) The right to be present in person is not superior to the right to be represented by counsel. It must follow that just as the right to be present in person may be waived, so may the right to be present by counsel. It was stated in People v. Smith, 6 Ill.2d 414, 129 N.E.2d 164, that where a defendant voluntarily absents himself from the courtroom at the moment the verdict is rendered, or runs away from court after he learns of the verdict, and refuses to return for sentencing or further proceedings, he is deemed to have waived his right to be present and cannot claim any advantage on account of his absence. In People v. Nettles, 107 Ill. App.2d 143, 246 N.E.2d 29, it was held that by stipulating that a jury might return a sealed verdict and that polling of the jury was waived *565 constituted a waiver of the right to be present in person throughout the trial, including the rendition of the verdict.
The case of Newagon v. Swope, 183 F.2d 340 is strikingly similar on its facts in that defendant was represented throughout the trial by counsel except that when the verdict was returned his attorneys were not in the courtroom but they were present, however, the following day when defendant was sentenced. Defendant urged as error the fact that when the jury returned the verdict his attorneys were not present in the courtroom and the jury was not polled. The court remarked that the record was wholly lacking as to why his attorneys were not present and that the United States Marshall reported that he had been unable to find them. The court noted that nothing had occurred at the time of rendition of the verdict that prejudiced defendant in the slightest degree and since the absence of defendant's counsel was voluntary it could not deprive the court of jurisdiction to proceed. The court stated:
"We think that to say that the courts must cease to function, indeed, are without jurisdiction to proceed further, until they search for, seek out and bring in counsel whose duty it is to be in court, and who by their own volition are absent, is to indulge in overmeticulous nicety of construction of the constitutional provisions."
Also similar is Smith v. United States, 411 F.2d 733, where the defendant's attorney was present throughout the trial but involuntarily absent at the time the jury verdict was rendered. Notwithstanding the fact that the court, upon its own motion, polled the jury, it was held that the defendant had been denied the effective representation of counsel because of his absence at the time the verdict was rendered. The court pointedly distinguished its case from Newagon v. Swope, supra, upon the grounds that the absence of counsel was involuntary, whereas in Newagon it was voluntary. We think that the court in Smith v. United States, was overly technical in its holding since the court, acting on its own motion had polled the jury and nothing else appeared to show that any prejudice or detriment of any kind resulted from counsel's absence. In People v. Nelson, 18 Ill.2d 313, 164 N.E.2d 16, a defendant was involuntarily absent at the rendition of the jury verdict and the Supreme Court reversed the case for a new trial since defendant's right to be personally present at all stages of his trial, including the rendition and recording of the jury verdict, had been abridged. In People v. Allen, supra, the defendant was removed from the courtroom during the trial because of his misconduct and the court held such misconduct to be a waiver of the right to be present. Here we note that defendant was represented throughout the trial by his privately retained counsel, that his counsel *566 failed to appear for resumption of the trial at the appointed time and apparently made no effort to notify the court of his inability to appear at the appointed time or to otherwise give notice of or explain his absence. It further appears that an effort was made to locate defendant's attorney for the purpose of getting him to court in order that the case might proceed and that the proceedings were delayed for twenty minutes while his presence was being sought. We believe that under these circumstances the defendant has waived any right to complain that the court proceeded to receive the jury verdict and his right to poll the jury in the absence of his counsel. As stated in People v. Steenbergen, 31 Ill.2d 615, 203 N.E.2d 404, "To allow a defendant to stop trial proceedings by a voluntary absence would allow him to profit by his own wrong." And in People v. Allen, supra, the court stated: "The right to appear and defend is not given to a defendant to prevent his trial either by voluntary absence, or by wrongfully obstructing its progress."
 7 We hold that since his counsel's absence was voluntary, rather than involuntary, and since it does not otherwise appear that anything occurred to defendant's detriment or prejudice, that the right to have counsel present at the reception of the verdict and to poll the jury has been waived. See Anno., 49 A.L.R.2d 619, 642, paragraph (c).
 8 Defendant's claim that he received an excessive sentence is untenable. It was within the permissive statutory range. It was doubtless imposed upon a due consideration of the circumstances of the crime in which defendant, with others, engaged in an attempted armed robbery in which dangerous weapons, one of which was an automatic rifle, were not only brandished, they were used. The manner and circumstances of the shooting give the unmistaken notion that the shooting was done with intent to kill. It is only fortuitous that the complaining witness did not die with the result that defendant would be on trial for murder rather than attempted armed robbery. We note from the probation report that although defendant had no previous felony convictions his background and record as a police character are devoid of any redeeming features. The sentence imposed by the trial court will not be disturbed.
For the foregoing reasons the judgment and sentence of the trial court will be affirmed.
Judgment affirmed.
CREBS, J., concurs.
Mr. JUSTICE GEORGE J. MORAN dissenting:
It is undisputed that a waiver of the constitutional right to counsel must be "knowing and intelligent." A defendant "requires the guiding *567 hand of counsel at every step in the proceedings against him." Gideon v. Wainwright, 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733.
Pickett obviously had no physical control over his attorney's presence or absence when the verdict was rendered. He did not authorize his attorney to be absent and could not "knowingly and intelligently" waive his right to counsel in a situation over which he had no control. The majority holds that Pickett's counsel waived his right to counsel by his counsel's unexplained absence. Therefore, when a counsel absents himself at a critical stage of a trial, defendant waives his constitutional right. According to this rationale, the existence of the right to be represented by counsel is to be determined by his counsel and not by the defendant. But the right under the Sixth Amendment is guaranteed to the defendant, not his counsel. I dissent.